[936 NYS2d 181]

SALIMATOU BAH, Individually and as Conservator of the Person and Estate of OUMAR KAMANO, Respondent, v CHRISTOPHER BENTON et al., Appellants. (And a Third-Party Action.)

First Department, January 10, 2012

**APPEARANCES OF COUNSEL**

*Carroll, McNulty & Kull LLC*, New York City (*Sean T. Burns* of counsel), for Christopher Benton, Arrow Recycling and Tempesta & Son Co., Inc., appellants.

*Molod Spitz & DeSantis, P.C.*, New York City (*Marcy Sonneborn* of counsel), for Truck King International Sales & Service, Inc., appellant.

*DeAngelis & Hafiz*, Mount Vernon (*Talay Hafiz* of counsel), for respondent.

### OPINION OF THE COURT

MANZANET-DANIELS, J.

█ In this case we address the interplay between the *Noseworthy* doctrine and the familiar presumption that applies in cases of rear-end collision. We hold that where a plaintiff has established, through medical evidence, that he has no memory of an accident, plaintiff's burden is to submit prima facie evidence of defendant's negligence. To hold otherwise, in a case involving a rear-end collision, would be to effectively deprive a plaintiff of the benefit of the *Noseworthy* doctrine with respect to his claims against the driver and the owner of the other vehicle.

It is not contested, for purposes of these motions, that plaintiff's significant head injuries plunged him into a coma and resulted in post-traumatic amnesia that rendered him unable to recall or relate the circumstances of the accident. Plaintiff, having presented medical evidence establishing the loss of memory and its causal relationship to defendants' fault, is entitled to the lesser standard of proof applicable to a party unable to present his version of the facts (*see Noseworthy v City of New York*, 298 NY 76 [1948]).

█ In order to avail himself of the *Noseworthy* doctrine, it was incumbent on plaintiff to present prima facie evidence of defendants' negligence. This he has amply done. Plaintiff submitted, inter alia, the affirmed reports of accident reconstruction experts who opined that the driver of the truck, defendant Christopher Benton, was negligent in driving in the left lane; in bringing his vehicle to a stop in the right lane in contravention of the Vehicle and Traffic Law when he had sufficient momentum to steer onto the right shoulder; in failing to move his vehicle off the roadway once he was in the right lane; and in failing to deploy the required warning devices, including the setting off of flares and the placement of three reflective triangles around the disabled vehicle, at distances of approximately 10 feet, 100 feet and 200 feet behind the subject vehicle and in the center of the incident lane. Had these devices been properly placed at the

appropriate distances, plaintiff would have had over 200 feet to avoid the stalled truck and to be warned of its presence, significantly increasing his ability to react and maneuver his vehicle so as to avoid the truck. Plaintiff's experts noted that placement of reflective triangles was especially critical because the roadway was straight and level, making it more difficult to judge the separation distance between plaintiff and the stopped truck, leaving plaintiff with no perceptual cues but a change in the truck image size. Plaintiff's experts noted that trucks are not permitted in the left lane of the Bruckner Expressway in the area where the accident occurred, and opined that if the truck driver had been traveling in any other lane he would have been able to stop on the shoulder since he in fact managed to travel the distance from the left to the far right lane. Both plaintiff's experts and the trucking company's expert opined that the repeated breakdown of the truck was the result of negligent repair and faulty service rendered by third-party defendant Truck King, and was an essential factor in causing the subject accident.

The truck driver testified that the vehicle stalled while he was driving in the left lane of the expressway. The driver testified that he placed the truck in neutral, tried several times, unsuccessfully, to restart it, and ultimately steered the truck partially onto the shoulder, with a portion of the vehicle still in the right lane.[1] The driver instructed his helper to "put out the triangles," in the rear of the truck and proceeded to call his boss. He testified that his helper brought two triangles with him and placed at least one of the triangles at the rear of the truck prior to the accident. (It may be noted that applicable safety regulations require placement of three emergency reflective triangles in the case of a stopped emergency vehicle.) The record does not indicate whether this triangle was placed at the required distance from the rear of the truck so as to apprise approaching vehicles of the truck's presence in the roadway in sufficient time to allow approaching vehicles to stop or otherwise avoid the truck; moreover, the police officer who responded to the scene testified that he did not observe any reflective triangles, broken or otherwise, in the roadway. The record similarly is unclear as to whether the truck's flashers were on

---

1. The driver maintained that only one quarter of the vehicle protruded into the right lane; the police report and the officer on the scene, however, place the vehicle entirely in the right travel lane.

at the time of impact,[2] and whether, in the gloomy weather, any such flashers would have apprised an approaching vehicle of the presence of the truck in adequate time to stop.

The driver testified that the helper did not know how to deploy the flares, and that he did not deploy the flares himself, even though the flares were contained in the same box as the triangles and nearly three minutes elapsed before the truck was struck in the rear by the vehicle driven by plaintiff. During this time the driver was apparently on the radio with his boss.

The trucking company's accident reconstruction expert cited as three "critical factors" in the happening of the accident the improper servicing of the truck by defendant/third-party defendant Truck King, the characteristics of the stall, which prevented the driver from driving the truck off the roadway, and the presence of the truck in the travel portion of the roadway, a happenstance precipitated by the improper servicing.

The weather conditions at the time of the accident were described as "hazy," "misty" and "gloomy," and the roadway described as "wet" by officers who arrived on the scene.

Under these circumstances, plaintiff has more than adequately raised a triable issue of fact concerning the reasonableness of the truck driver's actions, and thus he is entitled to a trial on his claims.

■ ■ Plaintiff alleges that Truck King was negligent in repairing the truck prior to the accident and that its negligence was a proximate cause of the accident. We note that the *Noseworthy* doctrine does not apply to plaintiff's claim against Truck King because that claim is not based upon facts that plaintiff might have testified to had he not lost his memory (*see Bin Xin Tan v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 294 AD2d 122 [2002]). We reject Truck King's argument that truck driver Benton's negligence was a supervening cause absolving it of liability, and the argument by Benton and his employer, defendant Arrow Recycling and Tempesta & Son Co., Inc., that plaintiff's negligence in failing to avoid the rear-end collision renders their negligence—amply documented above—"immaterial." Whether Truck King's negligence was a proximate cause

---

2. The truck driver testified that he put the flashers on as soon as the truck stalled, and assumed, because they worked on battery, that the flashers were still operable at the time of the accident, though he did not personally observe the flashers illuminated in the minutes prior to the accident. The police officer who responded to the accident could not recall whether the flashers were operational when he arrived on the scene.

of the accident and whether Benton's negligence is an intervening cause relieving Truck King of its liability for negligent maintenance of the truck are issues for the trier of fact (*see White v Diaz*, 49 AD3d 134 [2008] [triable issue of fact existed as to negligence of driver of double-parked van, who was sleeping at the time the van was struck in the rear by another vehicle]; *Dowling v Consolidated Carriers Corp.*, 103 AD2d 675, 676 [1984] [where buses were stopped "where they had no right to be," on shoulder of expressway, triable issue of fact existed as to whether negligence of bus operator was a proximate cause of accident, even where vehicle in which plaintiff had been traveling experienced recurrence of a mechanical problem], *affd* 65 NY2d 799 [1985]; *Sutton v Carolei*, 244 AD2d 156 [1997] [triable issue of fact existed as to whether negligent repairs to plaintiff's vehicle, which was disabled and struck from behind, was a proximate cause of plaintiff's injuries]).

■ Further, if the *Noseworthy* doctrine is applicable—as defendants concede it is—Benton and his employer are not entitled to mechanical application of the presumption which typically pertains in cases of rear-end collision. The *Noseworthy* doctrine entitles a plaintiff to a lesser burden of proof in instances where plaintiff—owing to a defendant's negligence—is rendered incapable of testifying or offering his version of the facts. To say that *Noseworthy* applies, on the one hand, and then to say, on the other, that defendants are entitled to dismissal of the complaint because plaintiff has not put forth a non-negligent explanation for the accident—undermines the very purpose of the doctrine.

■ We also reject Truck King's argument that as a matter of law its allegedly negligent repair to the truck "merely furnished the occasion for the accident without actually being a cause of the accident." Engineering experts who submitted affidavits on behalf of plaintiff and the truck's owner opined that the truck's mechanical failure on November 24, 2005, the day of the accident, was caused by the misalignment of the moving parts of the engine/transmission assembly, particularly the flex plate. The truck had been brought to Truck King for repairs to address engine stalling on May 24, October 17 and October 31, 2005. In fact, Truck King replaced the flex plate as part of the October 17, 2005 repair.

Accordingly, the order of the Supreme Court, Bronx County (Lucindo Suarez, J.), entered August 2, 2010, which, to the extent appealed from as limited by the briefs, denied the motion of defendants Christopher Benton, Arrow Recycling and Tem-

pesta & Son Co. and the motion of defendant/third-party defendant Truck King International Sales and Service, Inc. for summary judgment dismissing the complaint as against them, should be affirmed, without costs.

MAZZARELLI, J.P., SWEENY, DEGRASSE and RICHTER, JJ., concur.

Order, Supreme Court, Bronx County, entered August 2, 2010, affirmed, without costs.